UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALEH ALMOZAIREE, RANI ABUSHAAR, OKSANA AKULOVA, ANICO INTERNATIONAL LTD., SALAM AL-AWAMI, ABDULLAH ALJAWINI, PETER BOWCOCK, ANDREY BRYANDINSKIY, SAQIB BUTT, ROBERTO D'ALBA, ALEXANDER BOLTAGO, ZALINA DARSIGOVA, ELI FRISCHMANN, SABRINA FRISCHMANN, NIGEL GALES, STEPHEN GLOVER, DAMIEN GREAVES, SILVIA HERNANDEZ, GULU GULIYEV, FIONA GUTSCHLAG, YA-WEN HSIAO, JOCELYNNE HOUGHTON, NOEL HUDSON, HARRY KENDALL, YEVGENIY KORENBLIT, SVETLANA KOMAROVA, SERGEY KRAVTSOV, ALEXANDER KRAMAR, RAJIV MEHRA, JYOTSNA MEHRA, DIAAELDIN MOHAMED, RAMZI MUASHER, SUVASHIS MUKHERJEE, SATARUPA MUKHERJEE, VLADISLAV NEMIROVSKY, PETER OSODE, EVGENIIA RADIVIL, ANNA RECHKUNOVA, DAVID RICKARD, POOJA SACHDEVA, SIMON SNELDER, MEGHNA MUKHERJEE, MICHAEL SIMM, DAVID SIMS, MARIA SEREBRYANSKAYA, MIKHAIL SOKOLOV, ALEKSANDR SOKOLOV, OLEG SPICHAK, DOUGLAS SMITH, SELINA LEE SWADLING, LUC PIERRE TOURNE, ANDREY VALIKOV, SVETLANA VLADIMIROVNA ORLOVA, MARINA VOLKOVA, DORRELL WALLACE, BARBARA WATTS, CAROL ANN WILKINSON, AHMED FATHELBAB and FATMA FATHELBAB<br><br><div align=center>Plaintiffs,</div><br>-against-<br><br>RENWICK HADDOW, ZOIA KYSELOVA, BAR WORKS INC., BAR WORKS USA LLC, BAR WORKS CAPITAL LLC, BAR WORKS SAN FRANCISCO 1, LLC, BAR WORKS MANAGEMENT INC., BARWORKS TRIBECA INC., BAR WORKS CHAMBERS LLC, BAR WORKS METROPOLITAN, INC., BAR WORKS 7TH AVENUE, INC., BAR WORKS EIGHTH AVENUE, LLC, BAR WORKS MIAMI, LLC, BAR WORKS NEVADA, LLC, BAR WORKS INSTANBUL, LLC, ABC CORP. 1-10, JOHN DOE 1-10 and JANE DOE 1-10<br><br><div align=center>Defendants.</div> | **CIVIL ACTION NO.:**<br><br>**1:17-cv-7245**<br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

<div align=center>1</div>

Plaintiffs, Saleh Almozairee, Rani Abushaar, Oksana Akulova, Anico International Ltd., Salam Al-Awami, Abdullah Aljawini, Peter Bowcock, Andrey Bryandinskiy, Saqib Butt, Roberto D'Alba, Alexander Boltago, Zalina Darsigova, Eli Frischmann, Sabrina Frischmann, Nigel Gales, Stephen Glover, Damien Greaves, Silvia Hernandez, Gulu Guliyev, Fiona Gutschlag, Ya-Wen Hsiao, Jocelynne Houghton, Noel Hudson, Harry Kendall, Svetlana Komarova, Yevgeniy Korenblit, Sergey Kravtsov, Alexander Kramar, Rajiv Mehra, Jyotsna Mehra, Diaaeldin Mohamed, Ramzi Muasher, Suvashis Mukherjee, Satarupa Mukherjee, Vladislav Nemirovsky, Peter Osode, Evgeniia Radivil, Anna Rechkunova, David Rickard, Pooja Sachdeva, Simon Snelder, Meghna Mukherjee, Michael Simm, David Sims, Maria Serebryanskaya, Mikhail Sokolov, Aleksandr Sokolov, Oleg Spichak, Douglas Smith, Salina Swadling, Luc Pierre Tourne, Andrey Valikov, Svetlana Vladimirovna Orlova, Marina Volkova, Dorrell Wallace, Andrey Valikov, Barbara Watts, Carol Ann Wilkinson, Ahmed Fathelbab and Fatma Fathelbab, by and through their attorneys at the Law Office of Michael S. Doran, LLC, by way of Complaint against the Defendants, allege as follows:

**THE PARTIES**

1. Plaintiffs are natural persons and/or corporate entities, each of whom is a citizen, or entity, of a foreign country, and who resides and/or whose principal place of business is located in one of nearly twenty (20) countries including, the Netherlands, Egypt, Belgium, United Kingdom, United Arab Emirates, Saudi Arabia, China, Andorra, Azerbaijan, New Zealand, Taiwan, Australia, Jordan, Israel, Nigeria, Bulgaria, Spain, Singapore, Qatar, Russia, or the United States of America, and who invested substantial sums of money in the Bar Works Entities, as further defined and detailed below.

2. Defendant Renwick Haddow is, upon information and belief, a natural person whose primary place of business is New York, New York and who is presently in the custody of the Moroccan government.

3. Defendant Zoia Kyselova is, upon information and belief, a natural person whose primary place of business is New York, New York.

4. Defendant Bar Works Inc. is a foreign for-profit corporation, incorporated and organized under the laws of the state of Delaware with its principal place of business in New York, New York.

5. Defendant Bar Works USA LLC is a domestic limited liability company organized and operating under the laws of New York, with its principal place of business in New York County, New York.

6. Defendant Bar Works Capital, LLC is a foreign limited liability company organized and operating under the law of California with a place of business in New York County, New York.

7. Defendant Bar Works San Francisco 1, LLC is a foreign limited liability company organized and operating under the laws of California with a place of business in New York County, New York.

8. Defendant Bar Works Management, Inc. is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

9.  Defendant Bar Works Tribeca, Inc. is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

10. Defendant Bar Works Chambers, LLC is a foreign for–profit corporation, incorporated and organized under the laws of the state of Delaware with its principal place of business in New York County, New York.

11. Defendant Bar Works Metropolitan, LLC is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

12. Defendant Bar Works 7th Avenue, Inc. is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

13. Defendant Bar Works Eighth Avenue, LLC is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

14. Defendant Bar Works Miami, LLC is a foreign business corporation organized and operating under the laws of Florida, with its principal place of business in New York County, New York.

15. Defendants Bar Works Nevada, LLC is a foreign business corporation organized and operating under the laws of the State of Nevada, with a principal place of business in New York, New York.

16. Defendant Bar Works Istanbul, LLC, upon information and belief is either a foreign business corporation or a fictitious entity, which operated by and through Barworks Management, Inc.

17. Defendants ABC Corps. 1-10 are presently unidentified entities which, upon information and belief, either were involved in the investment fraud committed by Defendants and/or improperly obtained the funds and/or assets of Plaintiffs by virtue of their relationship to the other named Defendants.

18. Defendants John Does 1-10 are presently unidentified individuals who, upon information and belief, either were involved in the investment fraud committed by Defendants and/or improperly obtained the funds and/or assets of Plaintiffs by virtue of their relationship to the other named Defendants.

19. Defendants Jane Does 1-10 are presently unidentified individuals who, upon information and belief, either were involved in the investment fraud committed by Defendants and/or improperly obtained the funds and/or assets of Plaintiffs by virtue of their relationship to the other named Defendants.

20. Each of the above-mentioned business entity Defendants are collectively hereinafter referred to as the "Bar Works Entities."

21. Each of the individual defendants, Renwick Haddow and Zoia Kyselova, are collectively hereinafter referred to as the "Individual Defendants."

## FACTUAL BACKGROUND

22. Beginning in or around July of 2015, plaintiffs were approached by representatives of the Bar Works Entities and furnished with private placement style marketing materials.

23. The Bar Work Entities were purportedly selling "units" of co-working desk space within various "Bar Works' branded locations throughout the United States which were, or were to be, purchased by the Bar Works Entities with investor funds.

24. Upon information and belief, the Individual Defendants, and each of them, was and is an owner, officer, director, employee, representative and/or agent of the Bar Works Entities.

25. Upon information and belief, the Individual Defendants, and each of them, operated and controlled each of the Bar Works Entities in all material respects concerning the below mentioned transactions that are the subject of this action and concerning all dealing with the Plaintiffs as set forth herein.

26. At all relevant times, the Bar Works Entities and the Individual Defendants regularly conducted business in the State of New York and, particularly in connection with the below mentioned transactions that are the subject of this action, have enjoyed the benefit of doing business within the State of New York.

## JURISDICTION AND VENUE

27. Each of the Bar Works Entities has been established, controlled, and/or operated by the Individual Defendants as part of a financial investment fraud, or Ponzi scheme, in violation of federal securities laws.

28. This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 77v, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 and 1332 and supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

29. This Court has personal jurisdiction over the Defendants by virtue of Defendants' violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934. Each

6

of the Defendants, either individually or in concert with one another, committed tortious acts and/or violations of the federal securities laws in this state as each of the transactions set forth herein was conducted in this state and through the use of the mails, or other instruments of interstate commerce.

30. Venue in this Court is proper pursuant to the Securities Act of 1933 and the Securities and Exchange Act of 1934 and Title 28 of the United States Code.

## FACTS COMMON TO ALL COUNTS

31. In July of 2015, Defendant Bar Works, Inc. was incorporated in Delaware.  Shortly thereafter, Defendant Haddow purchased 100% of the shares of Bar Works, Inc.

32. On or about October 27, 2015, Bar Works, Inc. was registered in the State of New York with an address of 47 W. 49th Street, New York, New York.

33. Bar Works Management, Inc. was incorporated in New York and was typically the entity designated as "manager" over the investments of the Plaintiffs, regardless of the location of the alleged investment.

34. The remaining Bar Works Entities were subsequently formed by Haddow and/or his representatives, each typically purporting to be associated with a specific Bar Works location.

35. Haddow and/or Kyselova, at all times relevant, owned and maintained control over the Bar Works Entities, including all bank accounts and financial transactions.

36. Notwithstanding Haddow's and Kyselova's control over the Bar Works Entities, their relationship to the Bar Works Entities was purposely shielded from potential investors through the invention of false personas.  Specifically, Haddow created a director/officer by

7

the name of "Jonathan Black" and used that persona in his interactions with employees, investors, and others.  Likewise, Kyselova intentionally misrepresented her identity as "Zoe Miller".

37. This deception was necessary, as Haddow's past fraudulent schemes would undoubtedly raise red flags and thwart he and Kyseolova's efforts to bill millions of dollars from potential, unsuspecting investors.

38. As noted in a pending Securities and Exchange Commission ("SEC") Complaint, among other sources, Haddow's prior financial misconduct has resulted in formal negative findings in the U.K.:

   a.  In or around November of 2008, the U.K.'s Insolvency Service disqualified Haddow from serving as a director of a company for a period of eight years based on financial misconduct for and entity called Branded Leisure Plc;

   b.  Notwithstanding the disqualification, in July of 2013, the U.K.'s Financial Conduct Authority ("FCA"), filed an action against Haddow based on misconduct unrelated to the Branded Leisure matter, alleging that his actions unlawfully promoted or operated "collective investment schemes" during a period they were unauthorized to do so and which were sold through misleading statements;

   c.  In February of 2014, the High Court of Justice, Chancery Division, ruled against Haddow, a ruling later upheld by the British Court of Appeal[1].

---

[1] See, Securities and Exchange Commission v. Renwick Haddow, et al., Docket No. 17 cv 4950 (LGS), Complaint filed June 30, 2017.

39. The Bar Works Entities were funded through investors who bought "units" in the Bar Works Entities which units represented a purchase of numbered desk space co-working stations at "Bar Works" retail locations throughout the United States.

40. Haddow and Kyselova, through the Bar Works Entities, devised and operated a "Ponzi scheme" wherein the Bar Works Entities paid returns to its investors from new capital paid to the Bar Works Entities by new investors, rather than from profit earned through legitimate investments or business activities.

41. To do so, the Defendants devised and operated a scheme wherein the Bar Works Entities sold co-working desk space in locations that were never opened and/or never intended to be open for the meaningful operation of business.  Indeed, Defendants sold more co-working desk spaces than existed or ever intended to exist.

42. Upon information and belief, the Bar Works Entities were created as part of a scheme and artifice to defraud, and or obtaining money and property by means of false and fraudulent pretenses.

## THE FALSE AND MISLEADING REPRESENTATIONS OF DEFENDANTS

43. To further the scheme and artifice to defraud, and in an effort to shroud the Bar Works Entities in an elaborate and layered cloak of legitimacy, the Bar Works Entities and the Individual Defendants, created private placement memorandum style brochures (the "Offering Brochures") rife with false information and misrepresentations.

44. The purpose of the Offering Brochures was to target investors and induce those investors to fund the Bar Works Entities based upon the representation that they were acquiring

equity in the form of units of an individual "Bar Works" branded location representing one desk space within a "Bar Works" co-working retail space (the "Representations").

45. The Representations were false in one respect because some or all of the units being offered did not exist and/or were never intended to be delivered.

46. The Individual Defendants, and each of them, as an owner, officer, director, employee, representative, and/or agent of the Bar Works Entities, knew the Representations were false.

47. Upon information and belief, the Individual Defendants, and each of them, as an owner, officer, director, employee, representative, and/or agent of the Bar Works Entities, who operated and controlled Bar Works Entities in all material aspects, sent copies of the Offering Brochures to Plaintiffs.

48. The Offering Brochure detailed the "Bar Works Wealth Builder Program" in which "investors seeking income combined with capital appreciation are now offered the chance to purchase a 10- year lease on up to 100 workspace units as Bar Works […] Furthermore, each lease will benefit from any rent increases derived from the work space.  That means your minimum income will grow as customer charges rise and exceed the initial 14-16% yield in the later years of the lease".

49. According to the Offering Brochures for certain of the Bar Works locations, "the cost of each work space lease is $25,000, plus you receive a monthly income to begin 14 days after taking up the offer."

50. Notably, the San Francisco "Bar Works" location required a higher $30,000 per unit investment, while the Bar Works Istanbul location required a $10,000 per unit investment.

51. The Offering Brochure promised monthly income payments to begin 14 days after taking up the offer.

52. The Offering Brochures also promised a "reversion bonus of 25% when your lease expires – i.e., Bar Works will repay your initial capital outlay at 125% - $31,250 per $25,000 outlay."

53. The Offering Brochures further provided, "Bar Works" TM Inc. will retain the right to buy back your lease at a minimum of 125% of initial cost - $31,250 – at any point after the second year anniversary of investment and in the event of a change in group ownership or status."

54. The assertions promising income to the targeted investors were neither projections nor forecasts, but rather were phrased as "minimum" returns providing for a guaranteed profit.

55. The prospectuses also provided for a trading platform in which owners of workspace units could trade or sell their units.  These representations were likewise knowingly false, as the Individual Defendants and Bar Works Entities never made any efforts to create a platform in which the units could be traded and/or sold.  Indeed, Defendants never intended to permit such a platform, as the units sold to investors were unregistered, were never to be registered, and provided the investor with no security for their investment.

56. As noted, Haddow and Kyselova took pains to hide their identity, and the Offering Brochures purposefully omitted any relationship that the Individual Defendants maintained with Bar Works.  This omission, among others, was purposeful, as any indication that an individual with Haddow's past was involved in the investment would undermine his ability to prey upon foreign investors.

11

## THE INVESTMENT SCHEME

57. Purportedly to consummate the transaction, Defendants instructed Plaintiffs to wire $25,000 per "co-working unit" to Defendant Bar Works, Inc. to its JP Morgan Chase Bank account in New York, New York.

58. Upon receipt of the wire, each investor was required to execute, in electronic form, a 10-year lease ("Lease") in the workspace unit purchased which Lease further confirmed the guaranteed return to the investor at the conclusion of the Lease as well as a Sublease ("Sublease") back one of the Bar Works Entities which confirmed the monthly returns guaranteed to each investor.

59. In addition to the Lease and Sublease, the investor generally would receive a Certificate of Ownership confirming their investment in the Bar Works entities by the assigned unit numbers.

60. Notably, irrespective of the location of the Bar Works unit purchased by the investor, the investor was required to wire its investment funds through the Bar Works, Inc. New York office, and the Bar Works, Inc. office issued all correspondence to the investor, including an acknowledgement of the receipt of funds and the Certificate of Ownership.

61. Based upon the representations of Defendants, and each of them, the Plaintiffs transferred an aggregate sum of approximately $4,975,000.000 by wire transmission to Bar Works, Inc.

62. As noted by the SEC, the Leases, Subleases and Certificates issued by Bar Works are unregistered securities which were sold through the use of communications through interstate commerce to perpetuate a fraud on Plaintiffs.

12

63. Further, and despite Plaintiff's transfer of an aggregate sum of $4,975,000.00 to Bar Works Inc., the Plaintiffs were never provided with a written subscription agreement as required by New York law, including but not limited to a real estate syndicate offering pursuant to the NY GBS 352-e (1)(a), or otherwise were never provided with any other documentation acknowledging the aforementioned transactions, and never received the Bar Works securities.

64. As further evidence of Bar Works Entities scheme and artifice to defraud, after the Plaintiffs transferred an aggregate amount of $4,975,000.00 to Bar Works Inc., no notice of sale containing information required by Form D (17 C.F.R. 239.500) was filed with the Securities and Exchange Commission as required by 17 C.F.R. 230.503.

## SPECIFIC TRANSACTION OF EACH PLAINTIFF

65. On or about July 5, 2016, Plaintiff Salam Kamil Alawami, invested in four (4) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $100,000 in Bar Works Tribeca, Inc.  Plaintiff purportedly purchased a ten year lease for four (4) work spaces, assigned workspace numbers 7144, 9479, 7683 and 7089.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.   As of May 15, 2017, Plaintiff has not received required payments.

66. On or about January 24, 2017, Plaintiff Abdullah Aljawini invested in ten (10) units of the 95 Chambers Street, New York, New York 10017 "Bar Works" location by investing $250,000 in Bar Works Chambers LLC.  Plaintiff purportedly purchased a ten year lease for ten (10) work spaces, assigned workspace numbers 6954, 8503, 7119, 7207, 9540,

8205, 8632, 8072, 7358, and 8234.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

67.  On or about May 5, 2017, Plaintiff Peter John Bowcock invested in two (2) units of the 116 8th Avenue, New York, New York 10011, and two (2) units of the 31 NW 23rd Street, Miami, Florida 33127 "Bar Works" location by investing $50,000 in Bar Works Eighth Avenue, LLC and $50,000 in Bar Works Miami, LLC.  Plaintiff purportedly purchased a ten year lease for four (4) work spaces, assigned workspace numbers 7268 and 8285 in New York and work space numbers 8273 and 9806 in Miami.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc., wherein Plaintiff sub-leased the purchased workspaces to Bar Works Management Inc.

68.  On or about September 5, 2016, Plaintiff Andrey Bryandisnkiy invested in three (3) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $90,000 in Bar Works Capital, LLC.  Plaintiff purportedly purchased a ten year lease for three (3) work spaces, assigned workspace numbers 7814, 9546 & 8073.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

69.  On or about May 20, 2016, Plaintiff Saqib Amin Butt invested in five (5) units of the 47 7th Avenue South, New York, New York 10014 "Bar Works" location, and on or about February 10, 2016, plaintiff invested in two (2) units of the 31 NW 23rd Street, Miami, Florida 33127 "Bar Works" location by investing $125,000 in Bar Works 7th Avenue, Inc. and $50,000 in Bar Works Miami, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, workspace numbers 7220, 7353, 8332, 7356, and 8582 in New

York, New York and (2) work spaces, assigned work space numbers 9162 and 8096 in Miami, Florida.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

70. On or about June 22, 2016, Plaintiff Roberto D'Alba invested in three (3) units of the 70 White Street, New York, New York 10013, "Bar Works" location by investing $75,000 in Bar Works Tribeca, Inc.  Plaintiff purportedly purchased a ten year lease for three (3) work spaces, assigned workspace numbers 9050, 9022 and 8722.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

71. On or about October 24, 2016, Plaintiff Oksana Akulova invested in five (5) units of the 242 Metropolitan Avenue, Brooklyn, New York 10018, "Bar Works" location by investing $125,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, workspace numbers 9414, 8941, 9520, 8439 and 9253.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

72. Plaintiff Zalina Darsigova invested in one (1) unit of the 116 Eighth Avenue, New York, New York, "Bar Works" location by investing $25,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work space.  Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

73. On or about April 10, 2017, Plaintiff Rani Abushaar invested in five (5) units of the 31 NW 23rd Street, Miami, Florida  33127, "Bar Works" location by investing $125,000 in Bar Works Miami, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work

spaces, workspace numbers 9961, 9817, 9261, 9652 and 8327.  On the same day Plaintiff

signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

74. Plaintiff Alexander Boltago invested in three (3) units of the 242 Metropolitan Avenue,

Brooklyn, New York 11211, "Bar Works" location by investing $75,000 in Bar Works

Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for three (3) work

spaces.   On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with

Bar Works Management Inc.

75. On or about December 9, 2015, Plaintiff Gulu Guliyev invested in seven (7) units of the

47 West 39th Street, New York, New York 10018, "Bar Works" location by investing

$154,000 in Bar Works Inc.  Plaintiff purportedly purchased a ten year lease for seven (7)

work spaces, assigned workspace numbers 1, 2, 3, 4, 5, 6 and 7.  On the same day Plaintiff

signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

76. On or about October 5, 2016, Plaintiff Anico International Ltd. invested in three (3) units

of the 70 White Street, New York, New York 10013, "Bar Works" location by investing

$75,000 in Bar Works Tribeca.  Plaintiff purportedly purchased a ten year lease for three

(3) work spaces, assigned workspace numbers 8226, 8035 and 8531.  On the same day

Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management

Inc.

77. On or about February 9, 2017, Plaintiff Eli Frischman invested in one (1) unit of the 116

Eighth Avenue, New York, New York, 10011 "Bar Works" location by investing $25,000

in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for

one (1) work space, workspace number 9458.  On the same day Plaintiff signed a "Wealth

Starter Sub-Lease Agreement" with Bar Works Management Inc.

78. On or about February 18, 2017, Plaintiff Sabrina Frischmann invested in one (1) unit of

the 116 Eighth Avenue, New York, New York, 10011  "Bar Works" location by investing

$25,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year

lease for one (1) work space, assigned workspace number 7437.  On the same day Plaintiff

signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

79. On February 21, 2017, Plaintiff Sabrina Frischmann wired an additional payment of

$25,000 to Bar Works in error.  Despite repeated demands to return same, Defendants

refused to refund Plaintiff the payment and never issued any additional leases and/or work

spaces to Plaintiff.

80. On or about February 23, 2017, Plaintiff Nigel Gales invested in two (2) units of the 116

Eighth Avenue, New York, New York, 10011  "Bar Works" location by investing $50,000

in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for

two (2) work spaces, assigned workspace numbers 9443 and 8957.  On the same day

Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management

Inc.

81. On or about February 18, 2016, Plaintiffs Damien Greaves and Silvia Hernandez invested

in one (1) unit of the 41 West 46th Street, New York, New York 10013, "Bar Works"

location by investing $25,000 in Bar Works Inc.  Plaintiffs purportedly purchased a ten

year lease for one (1) work space, assigned workspace number 9533.  On the same day

Plaintiffs signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

82. On or about October 26, 2016, Plaintiff Fiona Gutschlag invested in two (2) units of the 242 Metropolitan Avenue, Brooklyn, New York 11211, "Bar Works" location by investing $50,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, workspace numbers 9874 and 7556.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

83. On or about December 30, 2016, Plaintiff Ya-Wen Hsiao invested in five (5) units of the 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing $125,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 7170, 7626, 7381, 8893 and 9422.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

84. On or about July 19, 2016, Plaintiff Jocelynne Houghton invested in two (2) units of the 70 White Street, New York, New York 10013, "Bar Works" location by investing $50,000 in Bar Works Tribeca.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 9784 and 9878.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

85. On or about January 22, 2016, Plaintiff Noel Anthony Hudson invested in one (1) unit of the 47 West 39th Street, New York, New York 10013, "Bar Works" location by investing $25,000 in Bar Works Inc.  Plaintiff purportedly purchased a ten year lease for one (1)

work space, assigned workspace number 116.  On the same day Plaintiff signed a "Wealth

Starter Sub-Lease Agreement" with Bar Works Management Inc.

86. On or about December 14, 2016, Plaintiff Harry Roy Kendall invested in two (2) units of

the 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing

$50,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year

lease for two (2) work spaces, assigned workspace numbers 9665 and 9519.  On the same

day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works

Management Inc.

87. On or about September 19, 2016, Plaintiff Yevgeniy Korenblit invested in one (1) unit of

the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by

investing $30,000 in Bar Works Capital, LLC and on or about October 6, 2016, plaintiff

invested in one (1) unit of the 95 Chambers Street, New York, New York 10007, "Bar

Works" location by investing $25,000 in Bar Works Chambers LLC.  Plaintiff purportedly

purchased a ten year lease for one (1) work space, workspace number 9804 in San

Francisco, California, and a ten year lease for one (1) work space, workspace number 7326

in New York, New York.  Plaintiff signed two (2) "Sub-Lease Agreements" with Bar

Works Management Inc., one for each of the two (2) units.

88. On or about October 18, 2016, Plaintiff Svetlana Komarova invested in two (2) units of the

95 Chambers Street, New York, New York 10007, "Bar Works" location by investing

$45,000 in Bar Works Chambers, Inc.  Plaintiff purportedly purchased a ten year lease for

two (2) work spaces, assigned workspace numbers 7325 and 7591.  On the same day

Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

89. On or about October 27, 2016, Plaintiff Sergey Borisovich Kravtsov invested in five (5) units of the 47 West 39th Street, New York, New York 10018, "Bar Works" location by investing $125,000 in Bar Works Inc.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 7740, 7024, 7444, 7739 and 7553.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

90. On or about January 20, 2017, Plaintiff Alexander Kramar invested in one (1) unit of the Yavuz Sultan Selim Boulevard, Hilal Konaklari, C2 Block D12, Pineartepe District, Buyukcekmece, Istanbul, Turkey, "Bar Works" location by investing $10,000 in Bar Works Istanbul, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work spaces, assigned workspace number 7767.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

91. On or about December 1, 2016, Plaintiffs Rajiv Rai Mehra and Jyotsana Mehra invested in two (2) units of the 95 Chambers Street, New York, New York 10017, "Bar Works" location by investing $50,000 in Bar Works Chambers, Inc.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 7698 and 7534.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

92. On or about December 20, 2016, Plaintiff Mohamed Diaaeldin invested in four (4) units of the 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing

$100,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for four (4) work spaces, assigned workspace numbers 9255, 7610, 9777 and 9763. On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

93. On or about March 30, 2016, Plaintiff Ramzi Muasher invested $75,000.00 in Bar Works, Inc. and was purportedly issued 75,000 shares of Bar Works, Inc.   Plaintiff was issued a stock certificate number 201 which appears to be executed by "J. Black" a fictitious individual created by Defendants.

94. On or about March 11, 2016, Plaintiffs Suvashis Mukherjee and Satarupa Mukherjee invested in one (1) unit of the 41 West 46th Street, New York, New York 10036, "Bar Works" location by investing $25,000 in Bar Works Inc.  Plaintiffs purportedly purchased a ten year lease for one (1) work space, assigned workspace number 7805.  On the same day Plaintiffs signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

95. On or about January 31, 2017, Plaintiff Katrina Mummery invested in one (1) unit of the 116 Eighth Avenue, New York, New York  10011, "Bar Works" location by investing $20,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work space, assigned workspace number 8372.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

96. On or about October 18, 2016, Plaintiff Vladislav Nemirovsky invested in five (5) units of the 95 Chambers Street, New York, New York  10007, "Bar Works" location by investing $125,000 in Bar Works Chambers, LLC.  Plaintiff purportedly purchased a ten year lease

for five (5) work spaces, assigned workspace numbers 8775, 8718, 8472, 7846 and 9755. On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

97. On or about October 28, 2016, Plaintiff Peter I. Osode invested in two (2) units of the 95 Chambers Street, New York, New York, "Bar Works" location by investing $50,000 in Bar Works Chambers Street, Inc., and on or about January 9, 2017, plaintiff invested in four (4) units of the Yavuz Sultan Slim Boulevard, Hilal Konaklari, C2 Block D12, Pineartepe District, Buyukcekmece, Istanbul Turkey, "Bar Works" location by investing $40,000 in Bar Works Istanbul, LLC. Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 7926 and 8701, in New York, New York, and a ten year lease for four (4) work spaces, assigned workspace numbers 9988, 9374, 8513 and 8167, in Instanbul, Turkey. On the same day Plaintiff signed two (2) "Wealth Starter Sub-Lease Agreements" with Bar Works Management Inc., one for the New York location and one for the Turkey location.

98. On or about April 20, 2017, Plaintiff Evgeniia Radivil invested in five (5) units of the 1203 South Main Street, Las Vegas, Nevada 89104, "Bar Works" location by investing $125,000 in Bar Works Management Inc. and in five (5) units of the 31 NW 23rd Street, Miami, Florida 33127, "Bar Works" location by investing $125,000 in Bar Works Miami, LLC. Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 8812, 9606, 9984, 9061 and 8774 in Las Vegas, Nevada, and a ten year lease for five (5) work spaces, assigned workspace numbers 7815, 8049, 8998, 9240 and 6891 in Miami, Florida. On the same day Plaintiff signed two (2) "Wealth Starter

Sub-Lease Agreements" with Bar Works Management Inc., one for the Law Vegas location and one for the Miami location.

99. On or about November 18, 2016, Plaintiff Anna Rechkunova invested in one (1) unit of the 242 Metropolitan Avenue, Brooklyn, New York  11211, "Bar Works" location by investing $25,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work space, assigned workspace number 8111.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

100.      On or about January 25, 2016, Plaintiff David Keith Rickard invested in five (5) units of the 47 West 39th Street, New York, New York 10018, "Bar Works" location by investing $110,000 in Bar Works Inc.  On or about December 5, 2016, plaintiff invested in four (4) units of the 95 Chambers Street, New York, New York 10007, "Bar Works" location by investing an additional $100,000 in Bar Works Chambers, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 111,112,113,114, and 115 in 47 West 39th Street, New York, New York, and a ten year lease for four (4) work spaces, assigned workspace numbers 7902, 7789, 8754 and 9365 in 95 Chambers Street, New York, New York.  Plaintiff was issued a Certificate of Ownership for the purchase at each location.

101.      On or about November 9, 2016, Plaintiffs Simon Snelder and Meghna Mukherjee invested in two (2) units of the 95 Chambers Street, New York, New York  10007, "Bar Works" location by investing $50,000 in Bar Works Chambers, LLC.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 8854 and

8163.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

102.    On or about February 16, 2016, Plaintiff Pooja Sachdeva invested in two (2) units of the 41 West 46th Street, New York, New York  10007, "Bar Works" location by investing $50,000 in Bar Works Inc.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 7940 and 9208.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

103.    On or about October 11, 2016, Plaintiff Michael Simm invested in one (1) unit of the 242 Metropolitan Avenue, Brooklyn, New York  11211, "Bar Works" location by investing $25,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work space, assigned workspace number 8048.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

104.    On or about January 20, 2016, Plaintiff David Sims invested in five (5) units of the 41 West 46th Street, New York, New York  10036, "Bar Works" location by investing $125,000 in Bar Works, Inc.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 39, 40, 41, 42 and 43. On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

105.    On or about September 27, 2016, Plaintiff Aleksandr Sokolov invested in five (5) units of the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by investing $150,000 in Bar Works Capital, LLC, and on or about November 1, 2016, plaintiff invested in an additional five (5) units of the 242 Metropolitan Avenue, Brooklyn,

New York 11211, "Bar Works" location by investing $125,000 in Bar Works Metropolitan, LLC.  In total, Plaintiff invested $275,000 in the Bar Works Entities.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 8785, 8560, 8481, 9720 and 8336 in San Francisco, California, and a ten year lease for five (5) work spaces, assigned workspace numbers 8036, 8982, 7229, 7820 and 8525 in New York, New York.  For each investment, Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

106.      On or about October 11, 2016, Plaintiff Mikhail Sokolov invested in five (5) units of the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by investing $150,000 in Bar Works Capital, LLC, and on or about November 15, 2016, plaintiff invested in six (6) units of the 242 Metropolitan Avenue, Brooklyn, New York, 11211, "Bar Works" location by investing $150,000 in Bar Works Metropolitan, LLC.  In total, Plaintiff invested $300,000 in the Bar Works Entities.  Plaintiff purportedly purchased a ten year lease for six (6) work spaces, assigned workspace numbers 8018, 7913, 8313, 8031 and 9104 in San Francisco, California, and a ten year lease for six (6) work spaces, assigned workspace numbers 9721, 8121, 7476, 7338, 7926, and 6972 in New York, New York.  For each investment, Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

107.      On or about September 23, 2016, Plaintiff Oleg Spichak invested in five (5) units of the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by investing $150,000 in Bar Works Capital, LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 7426, 7226, 7972, 7424 and

7656. On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

108.    On or about November 29, 2016, Plaintiffs Douglas Smith and Nicola Smith invested in two (2) units of the 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing $50,000 in Bar Works Eighth Avenue, LLC.  On or about September 30, 2016, Plaintiffs invested in two (2) units of the 95 Chambers Street, New York, New York 10007, "Bar Works" location by investing $50,000 in Bar Works Chambers, LLC.  In total, Plaintiff invested $100,000 in the Bar Works Entities.  Plaintiffs purportedly purchased a ten year lease for four (4) work spaces, assigned workspace numbers 8981 and 9948 in 116 Eighth Avenue, New York, New York 10011, and workspace numbers 7446 and 9917 in 95 Chambers Street, New York, New York.  On the same day Plaintiffs signed two (2) "Wealth Starter Sub-Lease Agreements" with Bar Works Management Inc.

109.    On or about May 20, 2016, Plaintiff Selina Lee Swadling invested in four (4) units of the 70 White Street, New York, New York 10013, "Bar Works" location by investing $100,000 in Bar Works Tribeca, Inc.  Plaintiff purportedly purchased a ten year lease for four (4) work spaces, workspace numbers 8709, 8797, 7720 and 9732.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

110.    On or about October 25, 2016, Plaintiff Luc Pierre M. Tourne invested in one (1) unit of the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by investing $30,000 in Bar Works Capital, LLC.  Plaintiff purportedly purchased a ten

year lease for one (1) work space, assigned workspace number 7989.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

111.     On or about December 30, 2016, Plaintiff Svetlana Vladimirovna Orlova invested in two (2) units of the 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing $50,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten-year lease for two (2) work spaces, assigned workspace numbers 6966 and 7377.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

112.     On or about September 30, 2016, Plaintiff Marina Volkova invested in one (1) unit of the 615 Sacramento Street, San Francisco, California 94111, "Bar Works" location by investing $30,000 in Bar Works San Francisco 1, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work space, assigned workspace number 9033.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

113.     On or about December 14, 2015, Plaintiff Dorrell Wallace invested in three (3) units of the 47 West 39th Street, New York, New York 10018, "Bar Works" location by investing $66,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for three (3) work spaces, assigned workspace numbers 83, 84 and 85.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

27

114.     On or about November 22, 2016, Plaintiff Andrey Valikov invested in five (5) units of the 95 Chambers Street, New York, New York 10007, "Bar Works" location by investing $125,000 in Bar Works Chambers LLC.  Plaintiff purportedly purchased a ten year lease for five (5) work spaces, assigned workspace numbers 8129, 7231, 9060, 6886 and 9455.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

115.     On or about November 23, 2016, Plaintiff Carol Ann Wilkinson invested in two (2) units of the 242 Metropolitan Avenue, Brooklyn, New York 11211, "Bar Works" location by investing $50,000 in Bar Works Metropolitan, LLC.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace numbers 8811 and 8339.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

116.     On or about December 3, 2016, Plaintiff Barbara Watts invested in one (1) unit of the 242 Metropolitan Avenue, Brooklyn, New York 11211, "Bar Works" location by investing $25,000 in Bar Works Metropolitan.  Plaintiff purportedly purchased a ten year lease for one (1) work spaces, assigned workspace numbers 9454.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

117.     On or about January 27, 2016, Plaintiff Saleh Fahd Almozairee invested in six (6) unit of the 41 West 46th Street, New York, New York 10036, "Bar Works" location by investing $150,000 in Bar Works Metropolitan.  Plaintiff purportedly purchased a ten year lease for six (6) work spaces, assigned workspace numbers 56, 57, 58, 59, 60 and 61.  On

the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc., wherein Plaintiff sub-leased the purchased workspaces to Bar Works Management Inc.

118.       In addition, in or around May of 2016, Plaintiff Saleh Fahd Almozairee purchased 100,000 shares in Bar Works, Inc. by completing a Private Placement Share Application and transferring $75,000.00 to Bar Works, Inc.  Shortly thereafter, Plaintiff received a Bar Works Inc. Share Certificate purporting to transfer 100,000 shares of Bar Works Inc. to Plaintiff.

119.       On or about July 11, 2016, Plaintiff Stephen Glover invested in three (3) units of the 70 White Street, New York, New York 10013, "Bar Works" location by investing $75,000 in Bar Works Tribeca, Inc.  Plaintiff purportedly purchased a ten year lease for three (3) work spaces, assigned workspace numbers 8434, 7105 and 8144.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

120.       Plaintiff Maria Serebryanskaya invested in one (1) units of 95 Chambers Street, New York, New York  10007, "Bar Works" location by investing $25,000 in Bar Works Chambers, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work spaces, assigned workspace number 9647.  On the same day Plaintiff signed a "Wealth Starter Sub-Lease Agreement" with Bar Works Management Inc.

121.       Plaintiff Ahmed Fathelbab invested in one (1) unit of 116 Eighth Avenue, New York, New York 10011, "Bar Works" location by investing $25,000 in Bar Works Eighth Avenue, LLC.  Plaintiff purportedly purchased a ten year lease for one (1) work spaces,

assigned workspace number 7507.  On the same day Plaintiff signed a "Singe Workspace Lease Agreement" with Bar Works Management Inc.

122.     Plaintiff Fatma Fathelbab invested in two (2) units of 495 Chambers Street, New York, New York 10007, "Bar Works" location by investing $50,000 in Bar Works Chambers, LLC.  Plaintiff purportedly purchased a ten year lease for two (2) work spaces, assigned workspace number 7860 and 7016.  On the same day Plaintiff signed a "Wealth Starter Lease Agreement" with Bar Works Management Inc.

123.     Each of the lease/sub-lease agreements entered into between the parties promised guaranteed income in periodic, i.e. monthly, quarterly, etc., payments.

124.     Though each of the individual investments were location specific, in each instance the investment funds were forwarded to, and the Certificates of Ownership issued by, Defendant Bar Works, Inc.

## DOMINATION AND CONTROL

125.     Each of the Individual Defendants is the alter egos of each of the Bar Works Entities, and as such exercised complete domination of the Bar Works Entities with respect to the facts herein, and as such domination was used to commit a wrong against Plaintiffs which resulted in the Plaintiff's injuries herein.

126.     Upon information and belief, the Individual Defendants caused the Bar Works Entities to restructure and reconfigure in order to avoid liability under each of the Plaintiff contracts.

127.     Upon information and belief, the Individual Defendants caused the Bar Works Entities to transfer assets without proper and/or due consideration, to unknown corporations.

128.     Upon information and belief, the Individual Defendants used Plaintiffs investment funds for their personal expenditures, wholly unrelated to any legitimate business purpose.

129.     The Bar Works Entities failed to observe corporate formalities in their transfer of business assets to avoid their creditors.

130.     The Individual Defendants exercise and exercised complete dominion and control over the transfer of assets of the Bar Works Entities.

## DEFENDANTS BREACH THEIR AGREEMENT WITH PLAINTIFFS

131.     Defendants failed to perform under the contracts with Plaintiffs in that they did not make required rental payments as agreed to in each of Plaintiff's contracts.

132.     Defendants failed to perform under the contracts in that they purported to change ownership of the Bar Works Entities or otherwise changed the Bar Works Entities positions with respect to the Plaintiffs' property interests, but failed to repay Plaintiffs their investments as is/was required under each of the Plaintiff's contracts.

133.     Defendants otherwise breached the contracts with Plaintiff without any intention of performing.

## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 12(A)(1) OF THE SECURITIES ACT

134.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 128 and incorporate same herein.

31

135.     The investments purchased by each Plaintiff constitutes a security as that term is defined by the Securities Act.

136.     The securities offered and/or sold by Defendants to Plaintiffs were unregistered.

137.     Defendants, either individually or in concert with one another, offered and/or sold the securities to Plaintiffs by use of the mails and/or other forms of communication in interstate commerce.

138.     In offering and/or selling the unregistered securities to Plaintiffs, Defendants' knowingly and/or recklessly made false and/or misleading statements and/or omissions designed to defraud Plaintiffs.

139.     Based on the foregoing, Defendants violated Section 12(a)(1) of the Securities Act and, as such, are jointly and severally liable to Plaintiffs for the full and complete refund of all monies paid to Defendants as investments in the Bar Works Entities.

## SECOND CAUSE OF ACTION
## VIOLATION OF SECTION 12(A)(2) OF THE SECURITIES ACT

140.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 128 and incorporate same herein.

141.     The investments purchased by each Plaintiff constitutes a security as that term is defined by the Securities Act.

142.     The securities offered and/or sold by Defendants to Plaintiffs were unregistered.

143.     Defendants, either individually or in concert with one another, offered and/or sold the securities to Plaintiffs by use of the mails and/or other forms of communication in interstate commerce.

144.     In offering and/or selling the unregistered securities to Plaintiffs, Defendants' knowingly and/or recklessly made false and/or misleading statements and/or omissions designed to defraud Plaintiffs.

145.     Plaintiffs reasonably relied upon the false and/or misleading statements and/or omissions of Defendants.

146.     Based on the foregoing, Defendants violated Section 12(a)(2) of the Securities Act and, as such, are jointly and severally liable to Plaintiffs for the full and complete refund of all monies paid to Defendants as investments in the Bar Works Entities.

## THIRD CAUSE OF ACTION
## VIOLATION OF SECTION 10(B) OF THE SECURITIES ACT AND SEC RULE 10b-5

147.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 141 and incorporate same herein.

148.     The investments purchased by each Plaintiff constitutes a security as that term is defined by the Securities Act.

149.     The securities offered and/or sold by Defendants to Plaintiffs were unregistered.

150.     Defendants, either individually or in concert with one another, offered and/or sold the securities to Plaintiffs by use of the mails and/or other forms of communication in interstate commerce.

151.     In offering and/or selling the unregistered securities to Plaintiffs, Defendants' knowingly and/or recklessly made false and/or misleading statements and/or omissions designed to defraud Plaintiffs.

152.     Plaintiffs reasonably relied upon the false and/or misleading statements and/or omissions of Defendants.

153.     Each of the Defendants knew that statements and/or omissions in the prospectuses and materials provided to Plaintiffs were false and/or misleading and designed to deceive and/or defraud Plaintiffs and, as such, each of the Defendants had a duty to disclose to Plaintiffs that (1) statements upon which Plaintiffs relied in making their investments were false, and (2) that the securities offered and sold by Defendants were unregistered.

154.     The Plaintiffs' investments and purchase of the unregistered securities was the result of the deceptive and fraudulent practices of the Defendants, either individually or in concert with one another.

155.     The individual Defendants knew the statements were false, or so recklessly disregarded the false and/or misleading statements and/or omissions, that each are liable to Plaintiffs for aiding and abetting the violations of the Securities Act and SEC Rules.

156.     Based on the foregoing, Defendants violated Section 10(b) of the Securities Act and SEC Rule 10(b)-5 and, as such, are jointly and severally liable to Plaintiffs for the full and complete refund of all monies paid to Defendants as investments in the Bar Works Entities.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**(Breach of Contract)**</u>

34

157.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 151 and incorporate same herein.

158.     Each of the Plaintiffs entered into contract with one or more of the named Defendants.

159.     Each of the Plaintiffs has duly performed all the conditions required of it under their respective contracts, namely, funding their investments in the "Bar Works" business, as set forth above.

160.     The contracts entered into between the parties included a guaranteed return of 125% of the investment of each Plaintiff.

161.     Defendants failed and/or refused to perform their obligations as required under each contract.

162.     By virtue of Defendants' breach of their contractual obligations, Plaintiffs have been damaged.

163.     Pursuant to the terms of the contracts, Defendants owe Plaintiffs collectively, $5,968,750.00, representing one-hundred twenty-five (125%) percent of Plaintiffs aggregate investment amount, pursuant to the terms of each Plaintiff's contracts, along with past due rental payments, costs of this action and reasonable attorney's fees.

164.     Pursuant to the foregoing, Defendants are jointly and severally liable to the Plaintiffs for Defendants' breach of contract.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

35

165.      Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 159 and incorporate same herein.

166.      Defendant Bar Works, Inc. received the aggregate sum of $4,900,000.00 from the Plaintiffs without consideration to the Plaintiffs for the amount transferred.

167.      Defendants' retention of the $4,975,000.00 received from the Plaintiffs is unjust and has operated to the Plaintiffs detriment and caused the Plaintiffs to suffer monetary and other damages.

168.      By reason of the foregoing, the Plaintiffs are entitled to a judgment against Bar Works Inc. in the amount of $4,975,000.00 with interest thereon, minus any amounts received by Plaintiffs to date.

## SIXTH CAUSE OF ACTION
### (Fraud)

169.      Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 163 and incorporate same herein.

170.      The Representations contained in the materials provided to Plaintiffs, and the representations Defendants made concerning the identities of Defendants' management and officers, was false and known to be false by Defendants.

171.      Among other things, and as more fully set forth above, the securities sold by Defendants were unregistered.

172.      As the agent and/or representative of the Bar Works Entities, the Individual Defendants made the Representations to the Plaintiffs in furtherance of the scheme and

artifice to defraud and for the purpose of inducing the Plaintiffs to transfer significant sums of money to Defendants.

173.     The Plaintiffs were justified in relying on the representations of Defendants and Defendants intended that Plaintiffs so rely upon the representations.

174.     The Plaintiffs transferred $4,975,000.00 to Defendants on the reasonable belief that they, in return, were acquiring an equity interest in a legitimate and profitable business, namely, particular "Bar Works" branded co-working desk spaces in retail locations in major cities in the United States and abroad.

175.     Instead, Defendants absconded with the Plaintiffs' monies.

176.     By reason of the foregoing, the Plaintiffs are entitled to a judgment against Defendants in the amount of at least $4,975,000.00 with interest thereon.

177.     In addition, because the Individual Defendants were owners, officers, directors, employees, agents and/or representatives of the Bar Works Entities, were in complete control of the Bar Works Entities, and had knowledge of and participated in the scheme and artifice to defraud, the Plaintiffs are entitled to a judgment against Individual Defendants in the amount of $4,975,000.00 with interest thereon.

178.     By reason of the foregoing, the Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION AGAINST BAR WORKS, MANAGEMENT, INC.
### (Breach of Fiduciary Duty)

179.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 173 and incorporate same herein.

180.     Defendant Bar Works Management, Inc., by virtue of its management/sub-lease agreements executed with each of the Plaintiffs with respect to their leases of the Bar Works, Inc. workspaces, became the manager and trustee with respect to the Plaintiffs' property interests in those leases.

181.     Plaintiffs did not retain the power to retrieve or otherwise exercise control over their purported workspace leases, but rather entrusted Bar Works Management Inc. to control, oversee, direct, use, dispose, and profit from the leases at Bar Works Managements' direction and without the guidance or control of the Plaintiff investors, for the Plaintiff's benefit.

182.     As trustee, Bar Works Management, Inc. had a fiduciary duty to conduct its management of the Plaintiff's property with the utmost good faith and undivided loyalty toward the Plaintiffs throughout the relationship.

183.     Bar Works Management, Inc. failed to fulfill its obligations as fiduciary and instead engaged in self-dealing, duplicity, concealment, misdirection of trust assets, and failure to pay over trust proceeds to the Plaintiffs in a timely fashion.

184.     Plaintiffs were thereby damaged by Bar Works Management, Inc.'s breach of its duty in the form of unpaid rental income, unpaid expected interest or other dividend payments, and the loss of diminution of their valuable property interests in the Bar Works retail locations and the workspaces therein.

## EIGHTH CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS
### (Veil Piercing)

185.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 to 179 and incorporate same herein.

186.    Upon information and belief, at the time of the transaction with the Plaintiffs, the Individual Defendants, and each of them, was in direct and complete control and domination of the finances, policies, activities, business practices and transactions of the Bar Works Entities, to the extent that at the time of the afore-and-below-pleaded transaction, the Bar Works Entities, and each of them, had no separate mind, will or existence of its own apart from the Individual Defendants.

187.    The Bar Works Entities, and each of them, is the alter ego of the Individual Defendants, as the Individual Defendants exercised complete control and domination over the activities of the Bar Works Entities.

188.    The Individual Defendants, and each of them, blatantly disregarded the corporate form of the Bar Works Entities, and utilized and manipulated the Bar Works Entities for their personal advantage.

189.    Such control and domination has been used by the Individual Defendants, under the guise of the Bar Works Entities, to commit wrongs against the Plaintiffs, including, but not necessarily limited to, misappropriation and conversion of the Plaintiffs' funds for personal use.

190.    Additionally, and in the alternative, there was such a unity of interests and ownership between and among the Individual Defendants and Bar Works Entities that the independence of the Bar Works Entities had in effect ceased or had never even begun.

191.     This domination and control proximately caused the Plaintiffs to suffer damages as complained herein.

192.     Accordingly, adherence to the fiction of a separate identity of the Individual Defendants and the Bar Works Entities would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

193.     Therefore, the corporate veil must be pierced and the Individual Defendants made liable to the same extent as the Bar Works Entities.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully pray for the following relief to be entered jointly and severally against Defendants: (1) Compensatory damages in the amount of at least $4,975,000.00, plus guaranteed returns on Plaintiffs' investments of an additional approximately $1,500,000.00, together with costs and interest; (2) Punitive damages in the amount of $25,000,000.00; (3) Reasonable counsel's fees and costs; (4) Pre-judgment and post-judgment interest; (5) an Order rescinding the contracts and/or agreements between the Plaintiffs and Defendants; and (6) such other and further legal and equitable relief as the Court, in its discretion, may deem appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

trial by jury on all causes of action and issues which, by right, are triable by jury.


Dated: September 22, 2017                              Respectfully submitted,



                                          **By:**      __/s/ Michael S. Doran_____
                                                      **Michael S. Doran, Esq.**
                                                      **Law Office of Michael S. Doran, LLC**
                                                      **959 S. Springfield Avenue**
                                                      **Springfield, New Jersey 07081**
                                                      **michael@doranlawgroup.com**
                                                      **Phone:  (973) 232-5165**
                                                      **Fax:      (973) 618-5567**